1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stuart A. Shanus, Esq. (SBN 188046)
Email: sshanus@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067-6078
Telephone: 310.734.5200
Facsimile: 310.734.5299

Attorneys for Defendant,
Capmark Finance, Inc.

UNITED STATES DISTRICT COURT

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CAPMARK FINANCE, INC.,<br><br>Defendant. | No. CV 09-4104 RSWL (JCx)<br><br>DEFENDANT CAPMARK FINANCE, INC.'S ANSWER TO COMPLAINT<br><br>[Demand for Jury Trial] |

Defendant Capmark Finance, Inc.'s Answer to Complaint

Defendant Capmark Finance, Inc. ("Capmark") hereby answers the Complaint of plaintiff United States of America ("the Government") as follows:

1.      Capmark admits only that the Government purports to bring this action under the False Claims Act, 31 U.S.C. § 3729, et seq.  Capmark denies the remaining allegations of paragraph 1.

2.      Capmark denies the allegations of paragraph 2.

3.      Capmark admits only that the mortgage loans at issue went into default and that HUD paid mortgage insurance claims in the aggregate amount of $25,895,701.21.  Capmark denies that any actions of Capmark caused the Government to incur its alleged losses.

## Jurisdiction and Venue

4.      Capmark admits that the Government purports to assert claims under the False Claims Act and common law and that this Court has subject matter jurisdiction.

5.      Capmark admits only that this Court has personal jurisdiction over Capmark and that it transacts business in this District.  Capmark denies the remaining allegations of paragraph 5.

6.      Capmark admits only that the Government claims that venue is proper in this District, and that Capmark is a California corporation which maintains an

office and transacts business in this District.  Capmark denies the remaining allegations of paragraph 6 and specifically denies that venue is proper in this District with respect to the claims relating to the Hudson Valley Care Center loan.

### The Parties

7.      Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7, which are therefore denied.

8.      Capmark admits the allegations of paragraph 8.

### The HUD Program

9.      Paragraph 9 contains conclusions of law that do not require a response from Capmark.

10.     Paragraph 10 contains conclusions of law that do not require a response from Capmark.

### The Canoga Care Center

11.     Capmark admits only that it submitted an application for mortgage insurance to HUD concerning the Canoga Care Center loan on May 10, 2000.  That application is a written document that speaks for itself, and therefore the allegations of paragraph 11 that purport to summarize that document are denied.

12.     Capmark admits that Living Center of Canoga Park, Inc. ("LCCP") was the then-current manager and operator of Canoga Care Center at the time of the

mortgage insurance application, but further states that the identity of the then-current manager and operator was immaterial to HUD and that, at the time of the application, Capmark believed that Living Center of the Valley, Inc. ("LCV") would be the manager and operator of the facility after the closing of the Canoga Care Center loan. Capmark admits that LCCP remained the manager and operator after the closing, but further states that Capmark did not learn that LCCP would remain in that position until shortly before the closing and that HUD also knew before the closing that LCCP would remain in that position. Capmark denies the remaining allegations of paragraph 12.

13. Capmark denies the allegations of paragraph 13.

14. Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, which are therefore denied

15. Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, which are therefore denied.

16. Capmark admits the allegations of paragraph 16, but further states that at the time Capmark submitted a Form HUD 92013-Supp and credit report for LCV, it believed LCV would be the manager and operator of the Canoga Care Center facility after the closing on the acquisition of that facility.

Defendant Capmark Finance, Inc.'s Answer to Complaint

17.     Capmark admits only that it did not submit to HUD a Form HUD-92013-Supp and credit report for LCCP, but further states that, at the time it submitted those documents with respect to LCV, Capmark believed that LCV, not LCCP, would be the manager and operator of the Canoga Care Center facility after closing on the acquisition of that facility.  Capmark denies the remaining allegations of paragraph 17.

18.     Capmark admits only that LCCP was reflected as the manager and operator of the Canoga Care Center in a closing document provided to HUD; that Capmark did not re-submit the mortgage insurance application to HUD with a Form HUD 92013-Supp and credit report for LCCP; and that LCCP was and continued to be the manager and operator of the Canoga Care Center facility.  Capmark further states that HUD knew prior to the closing on the acquisition of the Canoga Care Center facility that LCCP would be the manager and operator of that facility after closing.  Capmark denies the remaining allegations of paragraph 18.

19.     Capmark admits only that the mortgage loan for Canoga Care Center closed on October 4, 2000 and that LCCP continued to act as operator of the facility after the closing.  Capmark denies the remaining allegations of paragraph 19.

20.     Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, which are therefore denied.

21.     Capmark denies that the CCC loan went into default on December 1, 2002.  Answering further, the default date was initially August 1, 2002 and ultimately became October 1, 2002.  Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning LCCP's bankruptcy activities, which are therefore denied.  Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegation that HUD received the application for mortgage insurance benefits on August 1, 2003, which is therefore denied.

22.     Capmark admits the allegations of paragraph 22.

23.     Capmark denies the allegations of paragraph 23.

**Hudson Valley Care Center**

24.     Capmark admits the allegations of paragraph 24.

25.     Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, which are therefore denied.

26.     Capmark admits only that in connection with the closing on the Hudson Valley Care Center loan, it submitted a "Certificate of Mortgagor" prepared by mortgagor Hudson Valley Care Centers, Inc. dated February 28, 2002.  The "Certificate of Mortgagor" is a written document that speaks for itself, and therefore the allegations of paragraph 26 that purport to summarize that document are denied.

27.     The "Certificate of Mortgagor" is a written document that speaks for itself, and therefore the allegations of paragraph 27 that purport to summarize that document are denied.

28.     Capmark denies the averments of paragraph 28 and specifically denies that the secondary financing obligation of Hudson Valley Care Centers, Inc. was undisclosed to HUD.  To the contrary, the existence of such obligation was disclosed to HUD.

29.     Capmark denies the allegations of paragraph 29.

30.     Capmark admits only that Hudson Valley Care Centers, Inc. defaulted on its mortgage loan and that Capmark submitted to HUD a claim for mortgage insurance benefits.  Capmark lacks knowledge or information sufficient to form a belief as to the truth of the allegation that HUD received the application for mortgage insurance benefits on June 12, 2003, which is therefore denied.

31.     Capmark admits the allegations of paragraph 31.

## Count I

32.     Capmark incorporates by reference its responses to paragraphs 1-31.

33.     Capmark denies the allegations of paragraph 33.

34.     Capmark denies the allegations of paragraph 34.

35.   Capmark denies the allegations of paragraph 35.

## Count II

36.   Capmark incorporates by reference its responses to paragraphs 1-31.

37.   Capmark denies the allegations of paragraph 37.

38.   Capmark denies the allegations of paragraph 38.

39.   Capmark denies the allegations of paragraph 39.

## Count III

40.   Capmark incorporates by reference its responses to paragraphs 1-31.

41.   Capmark denies the allegations of paragraph 41.

42.   Capmark denies the allegations of paragraph 42.

## Count IV

43.   Capmark incorporates by reference its responses to paragraphs 1-31.

44.   Capmark denies the allegations of paragraph 44.

## Prayer for Relief

Capmark denies that the Government is entitled to any of the relief requested in its "Prayer for Relief."

## First Affirmative Defense

The Government has failed to state a claim upon which relief may be granted.

## Second Affirmative Defense

The Government's claims are barred by the applicable statutes of limitations.

## Third Affirmative Defense

The Government's claims are barred by the doctrine of laches.

## Fourth Affirmative Defense

The documents submitted by Capmark to HUD in connection with the mortgage insurance applications at issue were not the proximate and/or "but for" cause of the Government's alleged damages.

## Fifth Affirmative Defense

At or before the closing of the mortgage loan for the acquisition of the Canoga Care Center, the Government became aware that LCCP was the manager and operator of the Canoga Care Center and would continue to serve in that capacity after the closing.

## Sixth Affirmative Defense

At or before the closing of the mortgage loan for the acquisition of the Hudson Valley Care Center, the Government became aware that Hudson Valley Care Centers, Inc. had a secondary financing obligation.

### Seventh Affirmative Defense

The documents submitted by Capmark to HUD in connection with the mortgage insurance applications at issue were not prepared or submitted by Capmark with the intent to defraud or mislead the Government.

### Eighth Affirmative Defense

The documents submitted by Capmark to HUD in connection with the mortgage insurance applications at issue were not material to HUD's decisions to provide mortgage insurance to Capmark.

### Ninth Affirmative Defense

To the extent the Government has incurred any damages, such damages were caused by entities and persons other than Capmark.

### Tenth Affirmative Defense

The Government's claims are barred in whole or in part by the doctrine of waiver.

### Eleventh Affirmative Defense

The Government's claims are barred in whole or in part by the doctrine of estoppel.

### Twelfth Affirmative Defense

Any damages sought by the Government must be reduced by the amounts it received by selling the properties at issue.

WHEREFORE, Capmark prays as follows:

1.    For entry of judgment in favor of Capmark and against the Government on all claims in the Complaint;

2.      For costs of defending this action; and

3.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant Capmark Finance, Inc. hereby demands a jury trial as to all issues so triable.

Dated: November 19, 2009          REED SMITH LLP

         /s/ Stuart A. Shanus
         Stuart A. Shanus (SBN188046)
         1901 Avenue of the Stars
         Suite 700
         Los Angeles, CA  90067
         Telephone:  (310) 734-5200
         Fax:  (310) 734-5299

         OF COUNSEL:

         Arthur Makadon
         Geoffrey A. Kahn
         BALLARD SPAHR LLP
         1735 Market Street, 51st Floor
         Philadelphia, PA  19103-7599
         Telephone:  (215) 665-8500
         Fax:  (215) 864-8999

         Attorneys for Defendant
         Capmark Finance, Inc.

Defendant Capmark Finance, Inc.'s Answer to Complaint